## 10395

### JONES v. CAROLINA NATIONAL BANK.

#### (103 S. E. 27.)

1. BILLS AND NOTES—NEGOTIABILITY OF DRAFT NOT AFFECTED BY QUESTION WHETHER TITLE TO GOODS COVERED BY BILL OF LADING ATTACHED PASSED TO DRAWEE.—As respects the negotiability of a draft attached to an "order notify" bill of lading, as affecting duty of a bank, to whom the draft was negotiated, to communicate to its negotiator the refusal of the drawee to pay it, the question of who had title to the goods covered by the bill of lading was immaterial.

2. BILLS AND NOTES—WHETHER DRAWER NEGOTIATED DRAFT WITH RIGHT TO EXPECT THAT IT WOULD BE HONORED HELD FOR JURY.— In view of Negotiable Instruments Act, secs. 65, 79, 114, whether consignor who negotiated to a bank draft on consignee had notice that previous drafts had not been honored, and, if so, whether he had the right to expect such draft to be honored, *held* for jury on the issue of the bank's duty to notify consignor of nonpayment of the draft.

3. BILLS AND NOTES—HOLDER OF BILL HAS BURDEN OF PROVING NOTICE TO DRAWER OF DRAWEE'S NONPAYMENT.—In drawer's action against bank to which it negotiated bill, to recover amount deducted from his account on drawee's nonpayment, the bank, where residing in same place as drawer, had the burden of proving notice to drawer of drawee's nonpayment upon day following the dishonor as required by act March 4, 1914, 28 Stat., p. 683, sec. 103, notwithstanding section 193, relating to reasonable time; such section having reference to section 144 and not section 103.

4. BANKS AND BANKING—WHEN BANK TO WHOM BILL HAS BEEN NEGOTIATED MAY MAKE LOSS GOOD FROM DRAWER'S DEPOSITS.—If bank to whom bill had been negotiated sustained loss by reason of negotiability of bill and bank's failure to notify drawer of dishonor, it could not make good its loss from drawer's deposits; but, if bill was not negotiable, the bank could hold savings deposit to satisfy drawer's debt to bank or transfer amount of loss from drawer's savings account to credit side of drawer's open account.

5. BANKS AND BANKING—REFUSAL TO GIVE INSTRUCTION AUTHORIZING PUNITIVE DAMAGES IN DEPOSITOR'S ACTION HELD PROPER.—In drawer's action against bank to which it negotiated bill for damages for having deducted the amount of the bill from his account on drawee's nonpayment and having refused payments of certain checks because of such deduction, where there was no testimony tending to prove that the bank had any intention beyond the supposed rightful protec-

tion of itself from loss, Court's refusal to grant instruction that action of bank amounted to a breach of trust with fraudulent intent for which it was liable in punitive damages was proper.

Before SEASE, J., Richland, Spring term, 1919. Reversed, and new trial ordered.

Action by B. M. Jones against the Carolina National Bank. From a judgment for plaintiff, both parties appeal.

*Mr. D. W. Robinson,* for defendant-appellant, cites: *As to pleadings—issues:* 96 S. C. 242; 58 S. C. 59; 105 S. C. 276. *Nature of drafts and bill of lading:* XXVIII Statutes, p. 668 (Negotiable Instrument Act); 4th Eng. Enc. 548-9; 93 S. C. 41; 25 S. C. 222-3; 115 Mass. 224; 72 S. C. 453; 91 S. C. 378-9. *Notice—When and how necessary:* Negotiable Instrument Act, sec. 61, p. 678; section 65, subsection 4, same act, p. 679; sec. 79, p. 681; section 114, p. 685. *Presentment for acceptance not necessary:* Negotiable Instrument Act, sec. 143, p. 689. *Reasonable time and custom:* Negotiable Instrument Act, sec. 193, p. 696. *Fraud:* Negotiable Instrument Act, XXVIII Stat. 679, sections 61 and 65 (subsection 4); 97 S. C. 76; 97 S. E. 850; — S. C. —; 106 S. C. 31; 85 S. C. 130-1; 71 S. C. 152; 45 S. C. 502-3; Jones on Evidence (2d Ed.), sec. 435 (440); Greenleaf on Evidence (16th Ed.), sec. 284; 151 N. C. 393; 31 L. R. A. (N. S.) 910, and note; 90 S. C. 321; 111 S. C. 43; 96 S. E. 698; 45 S. C. 496; 23 S. E. 622. *Taking advantage of defendant's mistake or confidence:* 180 Pa. St. 165; 57 Am. St. Rep. 627-8, and note; 122 Cal. 580; 68 Amer. St. Rep. 70, 73; 4 Rawle 141; 26 Am. Dec. 125; 10 R. C. L. 1059; 34 Pa. St. 365; 75 Am. 671; 70 S. C. 115; 69 S. C. 330; 3 Rich. Eq. (24 S. E.), p. 429; 25 S. C. 225; 93 S. C. 42; Negotiable Instrument Act, sec. 55, p. 677. *Want or failure of consideration:* 100 S. C. 394. *Right to charge back draft:* 101 S. C. 459; 92 S. C. 448; 96 S. C. 82; 1 Morse on Banks and Banking (4th Ed.), secs. 324, 337; 69 S. C. 383; 3 Amr. Eng. Enc. of Law (2d Ed.) 835, and cases; 4 Dev. (15 N. C.) 524-5; 124 Fed. 61; 59 C. C. A.

427; 6 Cent. Dig. 1244; 92 S. C. 444-5. *Charge misleading and confusing:* (S. C.) 100 S. E. 75-6; 98 S. C. 201; 96 S. C. 80-2. *Charge on facts:* 96 S. C. 80-1; 47 S. C. 523; 91 S. C. 217. *Right to charge back drafts:* 101 S. C. 459; 3d Am. Eng. Enc. of Law (2d Ed.) 835; 69 S. C. 383; 1 Morse on Banks and Banking (4th Ed.), secs. 324, 327; 4 Dev. (15 N. C.) 524-5; 124 Fed. 61; 59 C. C. A. 427; 6 Cent. Digest 1244; 192 U. S. 145; 48 L. Ed. 383; 111 U. S. 125; 28 L. Ed. 374; 6 Cent. Dig. 1194. *Debts in same right:* 1 Morse on Banks and Banking (4th Ed.) 334; 104 U. S. 54; 26 L. Ed. 698, 699; 26 S. C. 548, 552; 12 N. Y. 266; 14 S. C. 118; 7 Law Rep. Q. B. 34; 1 Morse on Banks and Banking (4th Ed.), sec. 327; 69 S. C. 383; 92 S. C. 447-8; 97 S. E. (S. C.) 945-6; 101 S. C. 459. *Agency of Pope:* 96 S. C. 82; 34 L. R. A. (N. S.) 444, and cases; 83 Vt. 528; 77 Atl. 869. *Plaintiff violated the provisions of the Negotiable Instrument Act when he deposited this draft, without giving to the bank the knowledge and notice which he possessed which would have affected its value and validity in that:* (a) *He had knowledge of facts which would have impaired the validity of the intrument and rendered it valueless:* Sec. 65, subsection 1; (b) *He had no reason to expect the instrument would be accepted or paid when presented:* Sec. 80; (c) *Having no right to expect its acceptance or payment he had no right to notice of dishonor:* Sec. 114, subsection 4.

*Messrs. Graydon & Graydon,* for plaintiff-appellant, submit: *Defendant had no right to take out of the savings department $1,134.35 of respondent's money and apply to claims against him:* Rule 5 of the bank-appellant; 5 Cyc., p. 606e; Banks and Banking, by Mitchie, vol. III, pp. 2187 to 2189; More on Banking, sec. 620; 129 Mass. 425; 101 N. Y. 58; 54 Am. Repts. 653; 127 N. Y. 488; 92 S. E. (S. C.) 945-6; 41 S. C. 277. *The Court should have charged the requests applicable to the refusal of the bank to pay checks drawn by the plaintiff, and which he would have had ample*

*funds to meet, if the defendant had not applied his deposits to their own purposes:* 69 S. C. 374; 41 S. C. 177; 2 Rich. Law 1518. *Refusal of new trial based on sufficiency of evidence not reversible error, unless there is a total absence of evidence to sustain the verdict:* 69 S. C. 101; 65 S. C. 197; 65 S. C. 510. *The point that there was no evidence to support the cause of action for punitive damages should have been first made either by a motion for nonsuit or a motion to direct a verdict:* Circuit Court Rule LXXVII; 83 S. C. 271; 91 S. C. 439; 104 S. C. 484; 88 S. C. 87; 86 S. C. 539. *The drafts in this case were clearly negotiable:* Negotiable Instrument Act of 1914, p. 668; Cyc., vol. XXIX, p. 660; 6 Cyc. 424; 4 S. C. 381; Smith on Mercantile Law 177; Chitty on Contracts 435; 1 C. & P. 53; 14 Wallace 106; 14 Wallace 266; 25 S. C. 216. *Fraud must be pleaded in order for a party to avail himself of it:* 2 Pom. Eq., sec. 882; 58 S. C. 56; 78 S. C. 482; 99 S. C. 383; 96 S. C. 240. *Defendant's exceptions 25, 26, 27 and 28 are too general to be considered:* 97 S. C. 278; 39 S. C. 296; 45 S. C. 494; 51 S. C. 306.

April 22, 1920.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

. The action is for tort and the damages are laid at $25,000; verdict for the plaintiff for $750; appeal by both parties.

The controversy arises out of the following circumstances: Jones is a butcher at Columbia and the defendant is a bank at the same place; Jones, during the months of July, August and September, 1917, undertook to ship to the Ashley Hide and Fur Corporation at Charleston nine carloads of green tankage, to wit, the bones, entrails and blood of newly slain animals; Jones drew at sundry intervals his several bills on the Ashley corporation for the price of the goods with bill of lading attached "order notify;" these bills were lodged with the defendant bank at which Jones had done his business

for some years; the bank immediately credited Jones with the face of the bills the aggregate of which was $2,729.64, which amount was nearly equally divided betwixt Jones' "open account" and Jones' "savings account," $1,385.99 to the first and $1,343.65 to the second; the bills and bills of lading were forwarded by the bank to its correspondent at Charleston; the drawee refused payment of them, of which circumstances the defendant, bank, was not advised by its Charleston correspondent until the latter part of August or the first of September, and of which circumstances Jones was not advised by the defendant, bank, until early in September; but the defendant, bank, alleges in the answer and contends in the testimony that Jones had actual notice of nonacceptance of the goods by the consignees from the mouth of the railway company, which carried them to Charleston; about the time of the discovery by the defendant, bank, that the seven bills of July and August, aggregating $1,697.14, had not been paid, Jones lodged with the defendant, bank, two additional and like bills, 4th September, 1917, $428.75, and 10th September, 1917, $603.75, and they were in like fashion put to Jones' credit, but the defendant, bank, was soon advised by its Charleston correspondent that these two September bills were dishonored; the defendant, bank, then took steps to protect itself against the loss of the money it had credited to Jones on the two September bills; on the 14th September it charged Jones' saving account with $603.75 and credited the same to his open account, and on 15th September it charged Jones' saving account with $428.75, and credited the same to his open account; the aggregate of $1,032.50 thus subtracted from his savings and added to the open account, was almost immediately dissipated by Jones' checks to sundry parties, and by the bank's check against it for $428.75 to offset the deposit aforetime credited to Jones' saving the sum of $3.27 still standing to Jones' credit; but Jones drew three checks, for which there were not sufficient funds to meet, and the payment of which

the bank refused, to wit: One to Dent, 5th September, for $20; one to Lorick, 18th September, for $60, and one to Swift, 21st September, for $16.30.

Out of these transactions the plaintiff has designated in effect two wrongs to him by the bank, both alleged to have been wilfully done, to wit: (1) The duty of the bank to have notified him of the nonacceptance of his goods by the consignee and the nonpayment of his bills by the consignee; its neglect to perform that duty, the damage to him consequent thereupon; and (2) the obligation of the bank to let stay out the sums to his credit in the savings department, and the wrongful transfer of the same to the open account, and there charging that account with the September bills and the failure to pay the three checks before stated.

The defendant has made 28 exceptions and the plaintiff has made 7 exceptions; and all of them, save the defendant's first exception (that for the direction of a verdict), go to the charge of the Court.

The charge takes up ten pages of the case, of which three are given to the requests to charge, and the exceptions to the charge takes up thirteen pages.

There were 17 requests to charge by the plaintiff and 5 requests to charge by the defendant.

So much was enough to confound the Court and jury. There ought to be more of simplicity and less of complication in procedure.

To follow these 35 exceptions in detail would be to commit the same heresy we have suggested the counsel to be guilty of.

The case turns on not near so many hinges.

The July and August bills, seven in number, and aggregating $1,697.14, may be laid out of view; and with them the claim for damage for the defendant bank's neglect to advise the plaintiff of their nonpayment, for although the goods against which they were drawn were not received by the consignee, nor were the bills paid by the consignee, yet

the plaintiff got the benefit of the shipments, for the bank gave him credit for the seven bills, and the bank has lost so much by the transaction. The cashier of the bank admitted the loss when he testified. And the last bill, that of 10th September, for $603.75, may be laid out of view; for the complaint alleges "that the plaintiff would not claim that the bank was liable for the last draft."

So, the determinative issue of fact and law is about the bill of 4th September for $428.75. The contention of the plaintiff thereabout is: (1) That the bill is a negotiable instrument; (2) that the bank failed to give notice to Jones of the nonpayment of that instrument; and (3) that the legal consequence of that omission is the loss of so much by the bank, and the gain of so much by Jones. Those are the issues now up for decision.

The Court charged the jury thus: "I charge you that we are bound by the act of the legislature of this State of 1914, to regulate all negotiable instruments—"An act relating to negotiable instruments"—and I charge you that the instrument dated September 4th, known as the September 4 instrument, was a negotiable draft, and unless the defendant had some understanding with Jones, it took that as a negotiable draft, subject, of course, to the law, which I will call your attention to."

"Now, the complaint of the plaintiff alleges that he was not notified of what was going on with the draft. I charge you that it was the duty of the bank to notify Mr. Jones, in order to hold him responsible, if notification was given by the bank in Charleston that the draft would receive attention as soon as the goods arrived, so that Mr. Jones could look after his property and use due diligence to save it. And if the bank failed to do that, as required by the law, which I will read you, then Jones was relieved from responsibility on the draft, and the bank would have to lose it."

The Court then read to the jury sections 89, 94, 96, 103, 104 and 106 of the negotiable instrument statute; and then

added these words: "You will see, therefore, gentlemen, that if you find that if the bank did not comply with the law, then it was liable to lose the payment on the draft of $428.75, and, as I understand, that is the only one in question, because it is admitted on all sides that the bank is not liable for the $603.75 draft, and that they have pocketed the losses on all drafts prior to that."

The appellant, bank, suggests in the inception that the bill was not negotiable, and that because the bill was attached to a bill of lading of the character well known and commonly described as "order notify;" and reliance is had upon *Grocery Co. v. Elevator Co., 72* S. C. 453, 52 S. E. 191, 2 L. R. A. (N. S.) 79, 110 Am. St. Rep. 627, 5 Ann. Cas. 261.

But it is immaterial here as it was material in the cited cases who had title to the green goods; the drawee was bound to pay the bill or to refuse to pay it; and his action thereabout was a fact to be communicated to the drawer.

Assuming that the bill was on its face negotiable, yet when Jones negotiated it to the bank he warranted that he had no knowledge of any fact which would impair the validity of the instrument or render it valueless. (Sec. 65 of the statute.)

The essence of a negotiable instrument is that it evidences a *bona fide* transaction. Otherwise a drawer might negotiate a fictitious instrument, capable only of being converted into value by the mere failure of the taker to give to the negotiator notice of nonpayment.

The law does not contemplate with favor a transaction of that sort; it declares that presentment for payment, even, is not required in order to charge the drawer where the drawer has no right to expect or require that the drawer or acceptor will pay the instrument (sec. 79); it also declares that notice of dishonor is not required to be given the drawer where the drawer had no right to expect or require that the drawer or acceptor will honor the instrument. (Sec. 114.)

The testimony tended to show that for some weeks before

Jones drew the bill in issue, and as early as the 11th August, he was frequently advised by the railroad company which carried the goods to Charleston that the consignee was not accepting the goods which had been shipped; three witnesses so testified; and plaintiff denied so much, and that made an issue which demanded an exact statement of the law applicable to such a case to guide the jury.

If, therefore, it was true (1) that Jones had knowledge that his July and August drafts were not being honored, it ought to have been also submitted to the jury (2) to find if he had the right to expect that the draft in issue would be honored. If he had not that rightful expectation, then the draft was not negotiable, and the Court was wrong to instruct the jury without any sort of qualifications that the draft was negotiable.

The appellant has suggested under the third head of the brief that Jones' act in sending forward the bill in issue was under all the circumstances of the case, a fraud on the bank.

But that issue was not made in the request to charge, and the Court was not advised of that issue, and did not decide it.

If the jury should conclude that the bill is negotiable, then there arises the question of notice by the bank to the drawer of its dishonor, for there is no question but that the bill was dishonored.

By the statute, and before it by the law merchant, when payment of a bill was declared by the drawee the holder is bound to notify the drawer of the fact; and the statute has definitely fixed the period of time in which the notice must be given, in this case on the day following the dishonor. (Sec. 103, act 1914, 28 Stats. 683.)

The burden is on the defendant to prove that such notice was given.

The testimony tends to show that the bill was dishonored on 6th September, and that it was back in the defendant's hands on 7th September, and that Jones had notice of the fact on 10th September.

There was no testimony tending to show that Jones was notified as early as the 8th of September, even.

The appellant seeks to modify the definite word of section 103 by those of section 193; but the last mentioned section has no application to the first mentioned section; it is applicable to cases like those described in section 144 and perhaps others.

Section 103 does not declare that notice of dishonor must be given within a "reasonable time," but within a definite time.

The Court, therefore, was right to given to the jury the rule of notice of dishonor laid down by the statute.

And, of course, the legal consequence of the failure to prove notice is by the words of the statute a discharge of the drawer. (Sec. 89.)

Reverting to the plaintiff's exceptions, they make three questions : (1) That the bank had no right to transfer money standing to the plaintiff's credit in the savings department to the plaintiff's credit on open account, as it is called; (2) that the bank's action in that matter was fraudulent; (3) that the refusal of the bank to pay the three checks to Dent, Lorick and Swift was illegal, for which the plaintiff is entitled to damages.

Plainly all these issues depend upon the negotiability of the bill.

If the proceeds of the $428.75 bill was lost to the bank by reason of the bill's negotiability, and by reason of the failure of the bank to notify the drawer of its dishonor, then the bank had no right to touch the deposit.

But if not so lost, then plainly the bank had the right to hold the deposit to satisfy a debt due to the bank by Jones; or, what is the same thing, to transfer it from the savings account of Jones and put it on the credit side of Jones' open account to effect the credit there of the same item to Jones.

Against such right the plaintiff cites and relies upon rule 5 of the bank's savings department; but that rule was plainly

made to protect the bank and not to limit it.   The case of *Nauful v. Bank,* 97 S. E. R. 843, cited by the plaintiff, has no relevancy to the issue.

The Court was right to refuse to charge the jury that the action of the bank in the circumstances now under review amounted to a breach of trust with fraudulent intent, for which it was liable in punitive damages.

The testimony does not tend to prove that the bank had any intention beyond the supposed rightful protection of itself from loss.

The three checks before referred to were refused payment by the bank rightfully or wrongfully as it may turn out who had the best right to the $428.75 fund.

The judgment is reversed and a new trial is ordered.